IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN LEE VARNUM,

     Petitioner,                             No. CIV S-04-2659 GEB CHS P

    vs.

RICHARD KIRKLAND, et al.,

     Respondents.                   FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner, a state prisoner proceeding pro se, brings this application for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner challenges his first degree murder conviction in Siskiyou County, California, Case No. SCCRF00210. In four separate but related arguments, petitioner challenges the admission of his confession in trial court. He argues that the police violated his privilege against self-incrimination (claim 1) and his right to counsel (claim 4), resulting in an involuntary confession that was improperly admitted into evidence (claim 2). Finally, petitioner concludes that the alleged errors were not harmless beyond a reasonable doubt (claim 3). After careful consideration of the record and applicable law, it is recommended that the petition be denied.

/////

/////

FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the unpublished decision of the California Court of Appeal, Third District:

> On October 30, 1999, Jeffrey Rasdal reported to the Klamath County Sheriff's Department that he witnessed defendant abusing his six-month-old daughter. At the time defendant, his girlfriend, and their daughter lived with Rasdal in a mobile home in Klamath Falls, Oregon. Defendant was arrested for child abuse on November 30, 1999, and was released the next day. After being released from custody, defendant moved out of Rasdal's mobile home and into a travel trailer next to his aunt's house in Klamath Falls. Defendant discovered on January 10, 2000, that Rasdal was the one who reported him for child abuse. The next day defendant went to Rasdal's mobile home and asked him to go for a ride. At defendant's direction Rasdal drove to the Red Rock Road area, in California, where Rasdal stopped to go to the bathroom. When Rasdal was finished, defendant walked up behind him and shot Rasdal in the back of the head.  On January 21, 2000, detectives from the Siskiyou County Sheriff's Department first interviewed defendant. Defendant was informed that the interview was voluntary and he was not in custody. The interview lasted approximately three hours.
>
> Detectives tried to interview defendant once again on January 28, 2000. Two detectives, Detective Krieger from the Klamath County and Detective Glines from Siskiyou County, went to defendant's trailer in an attempt to persuade defendant to return to the sheriff's station and give another statement. If defendant refused to come to the sheriff's station voluntarily, the detectives intended to arrest him. Initially, defendant refused to come out of his trailer. He told the detectives that he did not want to talk to anyone. Eventually, defendant left his trailer, walked to his aunt's house, and called his father. After completing the phone call, defendant began to walk back to his trailer. On the way back to the trailer defendant pointed at Krieger and said "Fuck you, talk to my lawyer."
>
> Defendant was arrested and transported by a Klamath County deputy sheriff to the sheriff's station where Detective Sergeant Villani of Siskiyou County was waiting. Villani was informed of defendant's statement that the detectives could talk to his lawyer. Earlier Krieger had arrested defendant on charges of child abuse, and there was "bad blood" between the two of them. Villani questioned defendant to clarify whether he was refusing to talk with the Siskiyou County detectives or just the Oregon detectives. Villani explained to defendant that the Siskiyou County detectives were not investigating the child abuse charges, they just wanted to talk about Rasdal's murder. Defendant told Villani that his father said he should not say anything without an attorney. Villani

informed the defendant that it was his right, not his father's. Defendant then agreed to talk to the Siskiyou County detectives, and Villani read defendant his *Miranda* rights. ( *Miranda v. Arizona* (1966) 384 U.S. 436, 444-445 [16 L.Ed.2d 694, 706-707].) Defendant waived his rights and gave a statement. Defendant's interrogation lasted approximately six hours. Ultimately, defendant confessed he murdered Rasdal because Rasdal reported defendant for child abuse.

(Opinion at 2-4.[1])

Petitioner was convicted of first degree murder. He was found to have committed the murder in order to prevent the testimony of a witness and found to have used a firearm. (Opinion at 1.) Petitioner was sentenced to life in prison without the possibility of parole to be served consecutive to an indeterminate term of 25 years to life, based on a sentence enhancement for using a firearm in commission of a murder. (Opinion at 1.) Petitioner's conviction was affirmed on appeal to the California Court of Appeal, Third District. (Opinion at 11.) The California Supreme Court denied review.[2] Petitioner filed a petition for writ of habeas corpus in the Siskiyou County Superior Court, which was denied without written opinion.[3] The opinion of the California Court of Appeal, Third District, is the last reasoned state court decision for AEDPA purposes.

STANDARD OF REVIEW FOR GRANTING RELIEF

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application

---

[1] C042701 opinion is lodged in this record as exhibit 3, filed 4/11/05.

[2] California Supreme Court denial order is lodged in this record as exhibit 5, filed 4/11/05.

[3] Denial of Habeas Corpus Petitioner is lodged in this record as exhibit 7, filed 4/11/05.

of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000); *Middleton*, 768 F.2d at 1085. Nor can habeas corpus be utilized to try state issues *de novo*. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972).

This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

The "contrary to" and "unreasonable application" clauses of §2254(d)(1) are different. Under the "contrary to" clause of §2254(d)(1), a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405. As the Third Circuit has explained, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3rd Cir. 1999) (en banc) (emphasis in original). The state court is not required to cite the specific controlling test or Supreme Court authority, so long as neither the reasoning nor the result of the state court decision contradict same. *Early v. Packer*, 537 U.S. 3, 8-9 (2002).

The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. *Williams*, 529 U.S. at 410. The focus of this inquiry is whether the state court's application of clearly established federal law is objectively unreasonable. *Id*. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*.

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003). A court may deny a petition for writ of habeas corpus on the ground that relief is precluded by 28 U.S.C. §2254(d) without addressing the merits of the claim. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

## ANALYSIS OF PETITIONER'S CLAIMS

When a person in custody is subjected to interrogation, he must first be read his *Miranda* rights in order for the information obtained to be admissible in court. *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966). If the suspect invokes either his right to silence or his right to an attorney, then that invocation must be "scrupulously honored," and all further interrogation must cease immediately. *Id*. at 479. To invoke the right to silence, it is sufficient if a suspect's words or conduct indicate that he wishes to remain silent. *Id*. at 473-74. To invoke the right to counsel, a suspect must make an unambiguous request for an attorney. *Davis v. Unites States*, 512 U.S. 452, 459 (1994).

In order to make an unambiguous request for an attorney, the individual "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512

U.S. at 459. A statement will be found to be ambiguous if a reasonable police officer, given the circumstances, would understand only that the defendant *might* be invoking his right. *Id*. In *Davis*, the Supreme Court held that the statement "[m]aybe I should talk to a lawyer" was ambiguous, and hence not a request for counsel. 512 U.S. at 462. If a request is ambiguous, the questioning may be continued with the limited purpose to clarify whether the suspect is, in fact, invoking his right to counsel. *Id*. at 461. The United States Supreme Court has not specifically imported the *Davis* standard for invocation of the right to counsel into the right to silence context. *See Evans v. Demosthenes*, 98 F.3d 1174, 1176 (9th Cir.1996) (declining to address whether *Davis* applies to right to silence cases).

Here, petitioner asserts that he invoked his *Miranda* rights on January 28, 2000, after detective Krieger (the Oregon detective) and detective Glines (the California detective) came to his trailer to speak with him. Petitioner was walking from his aunt's house back to his trailer, when he pointed at Krieger and said "[F]uck you, talk to my lawyer."[4] The California Court of Appeal found that

> in the present case substantial evidence supports the trial court's finding that defendant's alleged invocation of his *Miranda* rights was ambiguous given the totality of the circumstances. The alleged invocation occurred at defendant's residence, prior to or immediately after defendant's arrest, and was not in response to an advisement of *Miranda* rights. Additional factors increased the ambiguity of the situation. When defendant was arrested he was involved in two cases, in two jurisdictions with two sets of officers. Lastly, defendant's final and most pointed statement, "Fuck you, talk to my lawyer," was made directly to Krieger, a detective with whom the defendant had prior contact and there was "bad blood" between them.

---

[4] *Miranda* rights cannot be invoked "anticipatorily"- that is, before custodial interrogation. *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991). It is arguable whether petitioner was in custody, and thus capable of asserting his *Miranda* rights, at the time he made this statement. There was conflicting testimony whether it occurred before or after he was arrested, and the state appellate court determined only that the statement was made either "prior to or immediately after" petitioner's arrest. (Opinion at 7.) For purposes of this opinion, it will be assumed that petitioner was in custody when he made this statement to Detective Krieger. In any event, it is clear that petitioner was not in custody previously when he stated that he did not want to come out of his trailer and that he did not want to talk to anyone.

> Under the circumstances the statement might be interpreted in several ways. The statement might reasonably be interpreted as an insult directed at Krieger, the Oregon detective. Krieger had previously arrested defendant and his girlfriend in connection with the child abuse case. Due to defendant's prior history and his existing dislike of Krieger, defendant's actions and statements might reasonably be interpreted as expressing an unwillingness to cooperate with Krieger concerning the Oregon child abuse case. Finally, as defendant contends, the statement might be an attempt by defendant to assert either his right to silence or his right to counsel in the Rasdal murder.
>
> Faced with an ambiguous invocation of the right to counsel, Villani acted reasonably when he questioned defendant to determine if he was asserting his *Miranda* rights...
>
> There is substantial evidence to support the trial court's finding [that the waiver was voluntary, and knowingly and intelligently given]. The record shows that Villani questioned defendant for approximately 15 minutes to determine if defendant was asserting his *Miranda* rights. During this time Villani informed defendant that the detectives from California were not interested in the Oregon child abuse case, asked if the statements the defendant made at the trailer constituted a request for an attorney, and inquired if the statements were directed at the Oregon or California detectives. Villani's initial interview of the defendant on January 28 was for the purpose of determining if the defendant was invoking his right to counsel. Villani's questioning was not coercive and was of short duration. At the conclusion of the brief interview defendant agreed to talk to the California detectives concerning Rasdal's murder.

(Opinion at 7-10.)

        The state appellate court's determination that petitioner knowingly and voluntarily waived his *Miranda* rights is not contrary to, or an unreasonable application of any clearly established Supreme Court precedent regarding *Miranda* rights. Pursuant to AEDPA, no relief can be granted on petitioner's claims that police violated his privilege against self-incrimination (claim 1) or his right to counsel (claim 3), or that the alleged errors were not harmless beyond a reasonable doubt (claim 4).

        Although not supported by a statement of specific facts, petitioner's claim that his confession was involuntary (claim 2) could be interpreted as a direct challenge under the

7

Fourteenth Amendment as opposed to a claim that his *Miranda* rights were violated. To be admissible for any purpose, a statement cannot be the product of any force or threats by the government. *Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991). If coercive police conduct overcomes a suspect's free will, his statement will be deemed involuntary. *Blackburn v. State of Alabama*, 361 U.S. 199, 208 (1960).

As discussed above, Detective Villani briefly questioned petitioner in an attempt to determine whether petitioner was exercising his *Miranda* rights. After determining there was no invocation, petitioner was formally advised and his interrogation began. (Opinion at 10.) The interrogation lasted six hours and was punctuated by at least two breaks. (Opinion at 10.) There was no offer of leniency in exchange for petitioner's cooperation. (Opinion at 10.) There is no evidence of any improper inducement or coercive governmental conduct. Accordingly, petitioner is not entitled to relief on the claim that his confession was "involuntary."

## CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 15, 2008

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

2